ARDEN-RAYSHINE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100156.   Promulgated January 14, 1941.

*Roger W. Hardy, Esq.,* for the petitioner.
*Alexander M. Wilding-White, Esq.,* for the respondent.

OPINION.

TURNER: The tax herein is imposed by section 501 (a) (2) of the Revenue Act of 1936 in words as follows:

SEC. 501. TAX ON NET INCOME FROM CERTAIN SOURCES.

(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

\* \* \* \* \* \* \*

(2) A tax equal to 80 per centum of the net income from reimbursement received by such person from his vendors of amounts representing Federal excise-tax burdens included in prices paid by such person to such vendors, to the extent that such net income does not exceed the amount of such Federal excise-tax burden which such person in turn shifted to his vendees.

The petitioner does not deny that it has been reimbursed by certain of its vendors for that portion of the purchase price of cotton cloth attributable to the processing tax which had been paid by the said vendors with respect to the cotton in such cloth, and there is no dispute as to the amount of such reimbursement. The only question between the parties is to what extent, if any, the processing tax burden was in turn shifted by petitioner to its vendees. In section 501 (e) of the act,[1] Congress has given its approval to certain methods of computing or demonstrating the extent to which the said tax burden has been shifted to others by providing that the extent of the shift is presumed to be the amount shown by computation under one of the methods outlined. That section 501 (e) was intended to do no more than suggest an approved method for establishing the fact essential to the determination of the tax, namely, the extent of the shift of the processing tax burden to others, and to give the computation under such method a presumption of correctness, is further shown by section 501 (i) of the act,[2] which provides that either the taxpayer or the Commissioner may by proof of the actual extent to which the burden has been shifted to others rebut the presumption so established. Ad-

---

[1] (e) For the purposes of subsection (a) (1), (2), and (3), the extent to which the taxpayer shifted to others the burden of a Federal excise tax shall be presumed to be an amount computed as follows:

(1) From the selling price of the articles there shall be deducted the sum of (A) the cost of such articles plus (B) the average margin with respect to the quantity involved; or

(2) If the taxpayer so elects by filing his return on such basis, from the aggregate selling price of all articles with respect to which such Federal excise tax was imposed and which were sold by him during the taxable year (computed without deduction of reimbursement to purchasers with respect to such Federal excise tax) there shall be deducted the aggregate cost of such articles, and the difference shall be reduced to a margin per unit in terms of the basis on which the Federal excise tax was imposed. The excess of such margin per unit over the average margin (computed for the same unit) shall be multiplied by the number of such units represented by the articles with respect to which the computation is being made; \* \* \*

\* \* \* \* \* \* \*

[2] (i) Either the taxpayer or the Commissioner may rebut the presumption established by subsection (e) by proof of the actual extent to which the taxpayer shifted to others the burden of the Federal excise tax. \* \* \*

mittedly the petitioner in making its return did not supply the information necessary for a computation under either of the methods set forth in section 501 (e), and, accordingly, there is no presumption on the facts or under the statute as to the extent to which the burden of the processing tax here under consideration was or was not shifted to others. The petitioner having failed in its return, or at any time after the filing of the return, to supply the respondent with any facts to show that it had absorbed the tax in question and had not shifted the burden therefor to its vendees, the respondent concluded, and justifiably so, that the burden for the full amount of the tax for which the petitioner has now been reimbursed was shifted to others and on that basis determined the deficiency herein. Accordingly, the burden of proving by proper and sufficient proof that it did bear the said tax burden, as it alleges, and did not shift it to others is on the petitioner.

To sustain its burden the petitioner has placed in the record certain facts as to the cost of cotton cloth and other materials used in its operations and the testimony of two of its officials has been received. It is the petitioner's contention that those facts and the testimony mentioned are sufficient to show and do show that it did absorb the tax burden in question and did not shift it to its vendees. The respondent's contention is that the petitioner has not sustained its burden of proof in that the proof of record is not sufficient to show that the petitioner absorbed the tax in question. In his brief the respondent refers to the method prescribed in section 501 (e), *supra*, for demonstrating the extent to which the tax burden has been shifted to others, but with respect to the situation present in this case, states:

> The Government does not contend that section 501 (e), *supra*, specifies the only method by which it shall be determined whether or not the taxpayer bore the tax burden. It is believed that the burden of proof may be met by any other relevant and substantial evidence. It is also believed that section 501 (e), *supra*, not only provides a method which may be used by the taxpayer but also serves to illustrate the degree of substantial evidence which the Act requires the taxpayer to produce in order to satisfy the Commissioner or the Board of Tax Appeals that it bore the burden of the tax. If a statute sets forth a method by which a burden of proof may be met it seems clear that even if that is not the sole method, the statute does not contemplate the use of any less substantial a method so that the method suggested must logically be used as a measure of the quality of the evidence sufficient to meet this burden.
>
> Thus, under Rule 32 the taxpayer has the burden of proof. The Revenue Act of 1936 emphasizes that this evidence must be substantial and in good faith aimed at showing the true tax liability.

As we read the statement quoted above, the position of the respondent is that the petitioner, if he does not choose to submit proof of the nature specified by section 501 (e), may nevertheless submit

other proof, but such other proof must be sufficient to show that the tax burden in question was in fact absorbed by the petitioner, as it contends, and was not passed on to its vendees or shifted to others. Such also is our understanding of petitioner's burden of proof. We find no claim by the respondent that the petitioner is limited as to the form of his proof to the formulae prescribed in section 501 (e), *supra*, and certainly there is nothing in the statute to suggest that in a proceeding before this Board with respect to a deficiency in tax on unjust enrichment the proof required is any less or any more substantial than the proof required with respect to the determination of a deficiency in any other tax over which the jurisdiction of the Board extends.

The tax imposed by section 501 (a) (2) is imposed upon the net income of petitioner from reimbursement by its vendors to the extent that the portion of the purchase price of cotton cloth reflected by the amount now refunded, namely, $537.97 was in turn shifted by petitioner to its vendees. The question is therefore a question of fact and we must determine here, as in any other case in which the petitioner has the burden of proof, whether that burden has been sustained and the evidence of record shows as a fact that the said processing tax burden was absorbed by petitioner and was not shifted to its vendees.

That fact, petitioner contends, is demonstrated or established by the smallness of the amount of the refund and the relatively small amount of cotton cloth used in the manufacture of its product and by the further fact that it neither increased the price of its product because of the Agricultural Adjustment Act nor decreased the said price when that act was declared to be invalid,[2] so that at no time during the period of enforcement of the act was its prices influenced by the processing tax on cotton.

The smallness of the refund here under consideration is of little, if any, significance in determining the question before us. The sum in question merely represents the amount refunded to petitioner by its vendors during 1936 and it does not follow that it is the full amount by which the price paid by petitioner for cotton cloth during the designated period represented the processing tax on the cotton consumed in the manufacture of the cloth purchased. Neither does it give us any basis for determining that part of the cost of materials attributable to the said tax. We do know that the processing tax rate on cotton was 4.2 cents per pound of lint, see section 9, Agricultural Adjustment Act, and Cotton Regulations, Series 2, approved July 14, 1933, and we also know that the total amount paid by petitioner for cotton cloth during the period from August 1, 1933, to December 1, 1934, was $50,099.95, but in the absence of some information as to the lint cotton consumed

---

[2] *United States* v. *Butler*, 297 U. S. 1.

in the manufacture of the cloth purchased or the weight thereof and its cotton content (these latter facts, it would seem, petitioner should have been able to furnish with little trouble), we have no way of knowing or even approximating that portion of petitioner's cost of materials attributable to the processing tax on cotton. The cost of cotton cloth was slightly less than one-seventh of the total cost for all materials purchased by petitioner, and since the processing tax on lint cotton was 4.2 cents per pound, the processing tax may well have been a substantial part of the total cost of the cloth, and, if so, we are inclined to the view that petitioner with minimum difficulty should have been able to some extent at least to demonstrate the effect of such tax not only upon its cost but upon its profits, even though it did not choose to adopt the elaborate method of computation set out in section 501 (e), *supra*, and called for in the return.

Over the objection of respondent's counsel, and as a matter claimed to be within his independent knowledge, petitioner's president was permitted to testify that in box toes costing $33 per thousand pairs the cost of cotton was 75 cents and in that grade of box toes costing $12 per thousand pairs the cost of cotton was 80 cents. He testified further that he fixed the selling price for petitioner's product, namely, box toes, and also over objection of respondent's counsel, testified that there was no change in such selling prices immediately before, after, or during the designated period. On brief, petitioner now states that the cost of the cotton in box toes was 45 cents in each one thousand pairs costing $8, 75 cents in each one thousand pairs costing $32, and 80 cents in each one thousand pairs costing $45. It seems apparent, therefore, that on this point at least petitioner itself does not rely very strongly on the accuracy of the testimony of its president. Furthermore, we are unable to corroborate in any way the figures given by petitioner's president and those set out in the brief with the figures read into the record as to petitioner's gross sales, the total cost of materials and the cost of cotton cloth. We have no information whatever as to petitioner's labor or other operating costs and do not know whether, in comparison with the periods preceding and following the period here under consideration, such costs were greater, less, or remained constant.

The testimony to the effect that prices were not changed is little, if any, more impressive. Petitioner's president testified that he fixed the prices at which petitioner sold the box toes manufactured by it and that prices remained constant before, during, and after the designated period and, to corroborate this testimony, read from a few invoices selected at random from petitioner's files. At a subsequent stage in his testimony he stated, however, that the business of manufacturing box toes was highly competitive and that "the price is as is often the case fixed by the lowest successful bidder in the indus-

try" and "that there is very little, if any, contractual relationship" with the customers so that the petitioner's salesmen "feel every call is a new sale." It seems to us hardly likely both statements of the witness are correct. The fixing of prices by the lowest successful bidder in a highly competitive industry hardly indicates a constant price for the product produced. It is true the incorrectness of either one or both of these statements would not necessarily indicate that the processing tax burden was shifted by petitioner to its vendees, but by the same token it also falls short of establishing the conclusion petitioner is contending for, namely, that the said burden for the processing tax was not shifted to others but was absorbed by it. Furthermore it is not beyond the realm of probability that even though the industry is highly competitive the added cost resulting from the payment of the processing tax was a factor in the fixing of prices by the various competitors during the period in question.

From the record and the argument advanced, it seems that the petitioner feels that because the amount of the tax is small and the expense and trouble of preparing the data outlined in section 501 (e), *supra*, is rather substantial, the requirements as to the adequacy of the evidence are correspondingly lessened. In its brief, petitioner states that "the real issue is the extent of trouble to which the Bureau of Internal Revenue can compel a taxpayer to go to prove that a small tax is not owed", and at another stage it is stated that the petitioner "in disclosing the amount of refund has done all that can reasonably be required." As we have previously indicated, a taxpayer is not bound to produce the data necessary for computation under section 501 (e), *supra*, but that is not to say that the fact to be established is not the same or that the proof that is offered must be adequate and sufficient to support the conclusion of fact contended for. We have considered the record carefully and, except for the facts showing the steps in the manufacture of box toes and the description of the return filed, the only facts which on the evidence we feel justified in finding that might have some bearing on the ultimate fact here sought to be established are the figures reflecting the amount of the refund, the total cost of materials, the cost of the cotton cloth, and the gross sales, and these facts are far short of being sufficient to permit us to make any finding that petitioner absorbed the processing tax burden and did not shift it to its vendees. The establishment of an ultimate fact requires something more than a mere statement of the conclusion of the fact sought to be proved.

Reviewed by the Board.

*Decision will be entered for the respondent.*

BLACK concurs only in the result.

ARNOLD dissents.

Leech, dissenting: I agree with the exposition of the applicable law in the prevailing opinion. However, it seems to me, the petitioner has overcome the presumption of correctness attaching to the determination of the deficiency.

I think it is implicit in the record that $537.97 was the entire amount of processing taxes paid on the cotton used by petitioner during the period in which the processing tax was in effect. In my opinion, it is unfair to make the contrary assumption as the majority opinion does. If that amount is the total tax thus paid, it requires only a simple computation to find that the tax paid on the cotton used in each thousand pairs of box toes varied between three and five cents per thousand. This seems comparatively insignificant and supports rather than attacks the credibility of the president of the petitioner when he testified, unqualifiedly, that he fixed the prices at which these box toes were sold throughout the entire period in controversy and that those prices were constant. This testimony was uncontradicted and unimpeached. I do not think it can be ignored. The witness impressed the sitting Division as entirely worthy of complete credence. The two classes of box toes were the only commodities manufactured and sold by the petitioner during the period in review. The relative insignificance of the tax item, coupled with the facts that the prices for the box toes were not changed during this time, a finding which I think this record warrants, and that the president of the petitioner, who fixed the prices, knew nothing about the processing tax until after its repeal, seem to me to be wholly sufficient to overcome the presumption that the petitioner company passed on and did not absorb the tax. See *Hutzler Brothers Co.* v. *United States,* 33 Fed. Supp. 801; *Ney* v. *United States,* 33 Fed. Supp. 554; Regulations 95, art. 16.

Tyson agrees with this dissent.