G. L. Christian and Hazel M. Christian, et al. [1] v. Commissioner. Christian v. Commissioner
Docket Nos. 91746, 91747, 91750.
United States Tax Court
T.C. Memo 1963-94; 1963 Tax Ct. Memo LEXIS 250; 22 T.C.M. (CCH) 446; T.C.M. (RIA) 63094; April 1, 1963
Melvin M. Engel, Esq., for the petitioners. Robert I. White, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined deficiencies in petitioners' income tax liability for the calendar year 1957 as follows: Docket
No.
Deficiency
G. L. Christian and Hazel M.
Christian
91746
$2,491.44
F. A. Hunter and Gladys
Hunter
91747
5,395.53
Oswald Gerrard, Jr., and
Kathryn Gerrard
91750
3,104.34
*251 The issue for decision is whether petitioners are entitled to capital gains treatment on the gain from the disposal of rights which accrued to them, as joint venturers, under the name G. L. Christian and Associates, under a letter of acceptability from the Government dated December 17, 1956. Findings of Fact Some of the facts are stipulated and are hereby found as stipulated. Petitioners G. L. Christian (hereinafter sometimes referred to as Christian) and Hazel M. Christian are husband and wife and reside in Houston, Texas. They filed a joint individual income tax return for the year 1957 with the district director of internal revenue, Austin, Texas. Petitioners F. A. Hunter (hereinafter sometimes referred to as Hunter) and Gladys Hunter are husband and wife and reside in Houston, Texas. They filed a joint individual income tax return for the year 1957 with the district director of internal revenue, Austin, Texas. Petitioners Oswald Gerrard, Jr., (hereinafter sometimes referred to as Gerrard) and Kathryn Gerrard are husband and wife and reside in Cisco, Texas. They filed a joint individual income tax return for the year 1957 with the district director of internal revenue, *252 Austin, Texas. Christian, Hunter and Gerrard together with H. A. Crabb (hereinafter referred to as Crabb), A. J. Whipple (hereinafter referred to as Whipple), Paul H. Wolf (hereinafter referred to as Wolf), N. H. Mitchell (hereinafter referred to as Mitchell), and Preston R. Plumb, Sr., (hereinafter referred to as Plumb) formed a joint venture called G. L. Christian and Associates (hereinafter referred to as Associates) prior to November 1956. Shortly prior to November 16, 1956, the United States, through its agent and contracting officer, by advertisement requested interested parties to submit bids for the construction of 2,000 housing units at Fort Polk, Louisiana. These housing units were to be constructed under Title IV of the Housing Amendments of 1955 (Pub. L. No. 345, 84th Cong., 1st Sess., August 11, 1955) and Title V of the Housing Act of 1956 (Pub. L. No. 1020, 84th Cong., 2d Sess., ch. 1029, August 7, 1956). Associates submitted a bid dated November 16, 1956, to the contracting officer in the amount of $32,955,784. On December 17, 1956, W. P. McCrone (hereinafter referred to as McCrone), as agent and contracting officer of the United States, sent a "letter of acceptability" *253 to Associates. This letter apprised Associates that they had submitted the lowest acceptable bid on the Fort Polk housing project and required them to satisfy certain enumerated conditions before the contract for the construction of the 2,000 houses could be signed. The conditions set forth in the letter of acceptability required Associates to do, in substance, the following: (a) Organize a Delaware corporation. (b) Cause the stockholders of the corporation to execute a stock transfer and escrow agreement. (c) Make the necessary arrangements with a mortgage lendor acceptable to the Federal Housing Commissioner to finance the total cost of the housing project. Cause the newly organized Delaware corporation to enter into a building loan agreement with the mortgage lendor. Cause the mortgage lendor to apply to the Federal Housing Administration (hereinafter referred to as FHA) to obtain a commitment for mortgage insurance before January 16, 1957. (d) Cause the Delaware corporation to execute a certain lease. (e) Make arrangements for and obtain title insurance or other evidence of title of the housing project site. (f) Make arrangements for utility services necessary during *254 the construction of the 2,000 unit housing project. (g) Be prepared to pay, prior to the execution of the construction contract, (1) to the Federal Housing Commissioner commitment fee, filing fee, processing fee, and premium for the mortgage insurance during the construction period; and (2) to the contracting officer the sum of $313,382 representing the cost of architect-engineer services, the inspection fee in the amount of $953,000 and the sum of $1,000 as consideration for the lease. (h) Be prepared to furnish necessary payment and performance bonds. (i) Execute whatever documents are necessary to consummate the construction contract. (j) Cause the Delaware corporation and the mortgage lendor to execute whatever documents are necessary and incidental to the construction contract. (k) Furnish the contracting officer with photostatic copies of the FHA insurance commitment and FHA project analysis as soon as available. (l) Furnish an executed trade payment breakdown. (m) Make application to the contracting officer for a wage determination for use in the construction project. (n) Acknowledge receipt of the letter of acceptability. The letter of acceptability further *255 provided that should Associates fail to satisfy the conditions imposed, the United States could cancel its commitment in connection with the housing project and declare the $25,000 paid by Associates, as bid security, forfeited. Finally, the letter of acceptability provided that Associates was to be ready for closing of the final construction contract on or before February 15, 1957. Shortly prior to January 15, 1957, arrangements were made between Associates and the United States to extend the January 16, 1957, deadline, set on the issuance of the FHA commitment for insurance in condition (c) of the letter of acceptability, to January 26, 1957. Informal extensions of this deadline were obtained from time to time by Associates as it became necessary. By letter of January 23, 1957, McCrone, on behalf of the United States, advised Associates that they only had 22 days remaining in which to satisfy the conditions outlined in the letter of acceptability and to meet the February 15, 1957, deadline by entering into the construction contract. Associates had been having difficulty in arranging financing for the Fort Polk project. During the early part of February 1957, Associates began *256 negotiating with H. B. Zachry Company (hereinafter referred to as Zachry) of San Antonio, Texas, with regard to assigning the joint venture's rights under the letter of acceptability to Zachry. Shortly after being contacted by Associates, Zachry contacted Centex Construction Co., Inc., (hereinafter referred to as Centex) of Dallas, Texas, with a view to arranging a joint venture between Zachry and Centex to take the assignment from Associates. Despite these negotiations with Zachry, Associates continued to try to arrange financing and to comply with the conditions set forth in the letter of acceptability. By mid-February 1957, Associates had arranged for the formation of a Delaware corporation to be known as Fort Polk Housing Corp. The capital stock of this corporation was to be $1,000 which was to be divided into 100 shares of $10 each. The shares were to be held as follows: Name of
Shareholder
Number of Shares
F. A. Hunter
8
Oswald Gerrard, Jr.
8
G. L. Christian
8
H. A. Crabb
1
Paul H. Wolf
25
A. J. Whipple
25
P. R. Plumb
12 1/2
N. H. Mitchell
12 1/2
Associates requested that the United States extend the February 15, 1957 deadline set in the *257 letter of acceptability for entering into the construction contract for a 60-day period. By letter of February 27, 1957, McCrone, on behalf of the United States, advised Associates that an extension to April 15, 1957, had been granted. Because of difficulty in arranging interim financing with one mortgagee, during late February, Associates advised the United States that it might be necessary to divide the project into parts so that a number of mortgages could be arranged. By February 19, the $50,000 processing fee required by condition (g) of the letter of acceptability had been deposited with the FHA. In addition working capital of $2,000,000 and strong financial support had been arranged for. By March 1, 1957, Associates had requested the Shreveport office of the FHA to process eight applications for mortgage insurance and the joint venture's architect had prepared a proposed breakdown of the 2,000 unit project into eight areas. In addition, by March 1, 1957, Associates had taken steps to comply with the conditions set forth in the letter of acceptability of December 17, 1956, as follows: (a) The required Delaware corporation had been formed. (b) The officers of the corporation *258 had been elected. The joint venture promised that the escrow agreement of the corporation's stock would be executed and delivered at the time of the signing of the construction contract. (c) The joint venture had promised to complete the conditions set forth in condition (c) as soon as arrangements for interim financing had been definitely concluded. (d) The joint venture had caused the Delaware corporation to approve the form of lease, execution thereof to be held in abeyance pending approval by both the institution that was to furnish the interim financing and the Federal National Mortgage Association which was to be the ultimate purchaser of the loan. (e) Title insurance arrangements had been completed. (f) Discussions had been held with the United States contracting officer's office and satisfactory arrangements to insure utility service had been made. (g) The joint venture had promised to pay the necessary sums prior to entering into the construction contract. (As heretofore mentioned the processing fee of $50,000 had been paid as of February 19.) (h) The joint venture had furnished the United States' contracting officer the name of the surety on the bonds; the bonds *259 were to be executed at the time the construction contract was executed. (i) The joint venture's attorney had reviewed whatever contracts and documents were required and the joint venture was prepared timely to execute the instruments. (j) The Delaware corporation's attorney had reviewed whatever contracts and documents were required and was prepared timely to execute the instruments. (k) The joint venture had promised to furnish the insurance commitments and project analysis as soon as it was available. (l) The furnishing of the trade payment breakdown was held in abeyance pending receipt and analysis by architects and engineers of the project analysis. (m) Application for wage determination for use in the construction project had been made and the determination had been received. On March 8, 1957, Associates and representatives of Zachry conferred with McCrone and requested that he, on behalf of the United States, agree to the assignment of the whole housing contract. By letter of March 8, 1957, McCrone, on behalf of the United States, appraised Associates that they could proceed to sublet the contract. It was the understanding of the parties that the closing of the contract *260 would be handled in the name of Associates with a simultaneous assignment of the contract to Zachry. On March 13, 1957, the FHA issued a commitment for mortgage insurance on the 2,000 housing unit project at Fort Polk. Upon the issuance of this commitment an application together with the commitment fee was immediately filed with the Federal National Mortgage Association (hereinafter referred to as FNMA) for its commitment to purchase the loan upon completion of the construction project. On March 14, 1957, a contract was entered into between Zachry, called therein the assignee, and Associates, called therein the assignors. The preliminary recitations in the contract were to the effect that the assignors had: (1) Submitted the lowest acceptable bid on the 2,000 unit Fort Polk housing project; (2) Received the letter of acceptability dated December 17, 1956; (3) On February 27, 1957, received an extension to April 15, 1957, of the deadline for entering into the housing contract provided in the letter of acceptability; (4) Organized a Delaware corporation; (5) Made the necessary arrangements with a mortgage lendor acceptable to the FHA as a mortgage for financing the total *261 cost of the project; (6) Had the mortgagee apply to the FHA for mortgage insurance covering the 2,000 housing unit project which insurance had been duly issued; (7) Had the mortgagee agree to process its application for the FNMA for commitment to purchase the FHA insured mortgages; (8) Deposited cash of $25,000 with the United States Army Engineers at the time of submitting the bid and had deposited $50,000 with the FHA for processing fee. The contract provided further that: NOW, THEREFORE, in consideration of the premises and the consideration hereinbelow set out, Assignors hereby assign, transfer, set over and deliver unto H. B. Zachry Company all of their respective rights, titles and interest held or claimed by Assignors or either of them in and to the Fort Polk, Leesville, Louisiana, FHA No. 059-81003, Army No. 2, Project, described in letter of acceptability dated December 17, 1956, and letter extending the date for compliance therewith dated February 27, 1957, signed by W. P. McCrone, Colonel, CE, District Engineer, Corps of Engineers, United States Army, Galveston District, Galveston, Texas, including, but not limited thereto, all contracts issued or to be issued *262 in connection therewith, and granting unto H. B. Zachry Company full and complete rights of subrogation in the premises. Upon proper assignment being made to H. B. Zachry Company, and approval thereof by the proper governmental agencies, it is understood and agreed that H. B. Zachry Company will in good faith enter into performance of the housing contract to be executed by Assignors, and all other contracts called for and required by the terms of said letter of acceptability and the letter extending the time for compliance therewith, dated December 17, 1956, and February 27, 1957, respectively. It is also understood and agreed that Assignors will secure from the proper governmental agencies the requisite written approval of this assignment at or prior to the date set for the execution of said housing contract and they further agree to execute any and all documents and papers necessary or required to effect this assignment. Assignors further agree for the same consideration to cause the stockholders of the Fort Polk Housing Corporation to execute and deliver to Assignee a stock transfer covering all of the capital stock of Fort Polk Housing Corporation. Upon the execution and *263 delivery of this assignment to H. B. Zachry Company, and the approval thereof by the proper governmental agency, H. B. Zachry Company agrees to pay Assignors the aggregate sum of $250,000 at the times and in the following manner: (a) $100,000 in cash upon approval by the proper governmental agencies of this assignment; and (b) $150,000 in the form of a negotiable promissory note payable to the order of F. A. Hunter, Partner, in two installments, the first becoming due and payable on or before nine months from date of this assignment, in the amount of $75,000, and the remaining installment to be due and payable on or before eighteen months from said date; said note to bear interest at the rate of 4 1/2 per cent per annum payable on the same dates as the installments of principal are due and payable. H. B. Zachry Company agrees to reimburse Assignors the $25,000 deposited by Assignors with the submission of their bid for said project, together with the sum of $50,000 heretofore deposited by Assignors with the Federal Housing Administration District Office, Shreveport, Louisiana, as the processing fee in connection with the application for FHA mortgage insurance. Said sums are to *264 be paid to Assignors in cash at the time provided in Subparagraph (2) above. Assignors agree and hereby do indemnify and save H. B. Zachry Company, Fort Polk Housing Corporation, their successors or assigns, free, clear and harmless from all claims of every kind resulting from the acts, omissions or commissions of Assignors or their agents in connection with the subject project to the effective date of this assignment. Assignors, jointly and severally, agree to reimburse Assignee all sums of money advanced to the mortgage-lender to secure issuance of F.N.M.A. commitment to purchase said FHA insured mortgages upon the failure to secure approval by the proper governmental agencies of this assignment within the time allowed Assignors to execute the above mentioned housing contract with the United States Army Engineers and other closing agreements. This agreement shall be binding upon the heirs and legal representatives of the parties hereto. EXECUTED IN MULTIPLE COPIES, this 14th day of March, 1957. On or about March 14, 1957, Associates was informed that FNMA was not in a position to issue the commitment to purchase as there was not sufficient funds remaining from the appropriation *265 made by Congress for Capehart projects. On March 20, 1957, Associates, at the request of J. D. Lang (hereinafter referred to as Lang) of Zachry, requested the United States, through its contracting officer, to cause the FHA director in Shreveport, Louisiana, to resume processing the application for eight mortgages that eight commitments could be issued in lieu of the one commitment issued on March 13, 1957. This request resulted in the issuance of an amended letter of acceptability on April 11, 1957. On April 5, 1957, Harry F. Allen, director of the FHA, wrote the following letter of H. A. Crabb & Company, Inc.: Pursuant to Mr. F. A. Hunter's request of April 1, 1957, in regard to subletting the whole housing project to the H. P. Zachry Company of San Antonio, Texas, I wish to advise that this Administration would not object to such subletting provided the H. B. Zachry Company could first submit an acceptable FHA Form 2570 for approval by this Administration. On April 9, 1957, a joint venture contract was entered into by Zachry and Centex (hereinafter referred to as Zachry-Centex). This contract consummated negotiations between the two companies that commenced during February *266 1957. The preamble to the joint venture contract provided as follows: THIS AGREEMENT, made and entered into by and between H. B. ZACHRY COMPANY, a Delaware corporation with offices in San Antonio, Texas, hereinafter called "First Party", and CENTEX CONSTRUCTION CO., INC., a Delaware corporation with an office in Dallas County, Texas, hereinafter called "Second Party", WITNESSETH: WHEREAS, First Party has heretofore made and entered into a contract with G. L. Christian and Associates, which contract is dated March 14, 1957, under the terms of which the said G. L. Christian and Associates have agreed to assign all of their rights and interests in the Fort Polk, Leesville, Louisiana, FHA No. 059-81003, Army No. 2, Project, described in Letter of Acceptability dated December 17, 1956, and letter extending the date for compliance therewith dated February 27, 1957, signed by W. P. McCrone, Colonel, CE, District Engineer, Corps of Engineers, U.S. Army, Galveston District, Galveston, Texas, and all contracts issued or to be issued thereunder with complete rights of subrogation, under certain conditions as therein set forth, and which contract is referred to and made a part hereof for *267 all purposes; and WHEREAS, First Party and Second Party desire to associate themselves in a Joint Venture for the purpose of effecting or causing to be effected said contract of assignment, and undertaking the construction of said Armed Services Housing Project and all liabilities and obligations in connection therewith; and WHEREAS, it is desirable that the interests of the parties hereto, as such joint venturers, in performance of the premises, and any profits to be derived therefrom and any liability for any losses incurred in connection therewith, be defined by an agreement in writing: * * *
1. The parties hereto agree to associate themselves in a Joint Venture for the purpose of constructing and erecting an Armed Services Housing Project, being known and now designated as FHA Project No. 059-81003, Army No. 2, in the event that and only in the event that First Party is able to fully, finally and effectually obtain from G. L. Christian and Associates, by assignment or by subletting, whichever is appropriate and feasible, all the right, title and interest of the said G. L. Christian and Associates under the terms and provisions of the Letter of Acceptability dated December 17, 1956, as *268 extended, or as may be hereafter extended. 2. Under the terms of this agreement, the interests of the parties hereto in and to the performance of said Housing Contract, and in any and all property, materials and equipment acquired in connection therewith, and in and to any and all monies which may be derived from the permormance of said Housing Contract, shall be in the proportion of one-third (1/3) to First Party and two-thirds (2/3) to Second Party. 3. Notwithstanding anything to the contrary herein, it is agreed that any and all sums of money payable under the terms of said agreement of March 14, 1957, or any amendment thereto made with the consent of the parties hereto, shall be payable by the parties hereto in the proportions set forth in Paragraph 2 above and deemed a part of the Joint Venture. It is also agreed that any and all sums of money required to be advanced, deposited or paid in connection with the Housing Contract, either before, after or at the time the Housing Contract is executed, shall likewise be paid and provided for in the same proportions. 4. All net profits, of any kind, received from the performance of the aforesaid Housing Contract, and any anl all *269 losses resulting therefrom, shall be participated in and shared by the parties hereto proportionately and in accordance with their respective interests as set forth above. On April 11, 1957, an amended letter of acceptability was mailed to McCrone, acting as agent and contracting officer for the United States, to Associates. This letter amended the original letter of acceptability in that the 2,000 unit housing project at Fort Polk was divided into eight areas. The amended letter of acceptability also required the organization of eight corporations and the breakdown of the other relevant items into eight parts. In addition, Associates was required to take all steps necessary to cause the Federal Housing Commissioner to issue a commitment for insurance on or before April 25, 1957. Associates was given to May 15, 1957, to meet the conditions and to execute the contract or contracts for the construction of the 2,000 housing unit project at Fort Polk, Louisiana. On April 16, 1957, the following letter was sent by Associates' attorney to Zachry: Reference is made to the agreement between H. B. Zachry Company and G. L. Christian & Associates, dated March 14th, 1957, concerning the *270 Fort Polk, Louisiana Armed Services Housing Project. Pursuant to the request of your Mr. J. D. Lang, said project has now been divided into eight areas and in connection therewith, I am enclosing herewith letter of acceptability (as amended) dated April 11th, 1957, from Col. W. P. McCrone, District Engineer, Contracting Officer, Corps of Engineers, U.S. Army, Galveston, Texas. It is called to your attention that as a result of having broken the project into eight areas, this letter of acceptability now requires certain immediate steps to be taken in order for the letter of acceptability to remain in force, and not jeopardize the contracts to be entered into as therein provided. In view of the aforementioned agreement with your company, it is presumed that the various steps outlined in said letter of acceptability will be undertaken and completed by you, all of which should be made known to the contracting officer as requested in said letter of acceptability. As previously indicated, the writer will be very happy to continue to assist you and the other members of your organization in whatever manner is desired to the end that the contracts and other required documents may be concluded *271 at the earliest possible date. I have been instructed to advise you that each of the members of the joint venture comprising G. L. Christian & Associates, stand ready, willing and able to assist you in such manner as may be required of any or all of them. It is my understanding that you have been previously furnished with copies of letters from the proper governmental agencies approving the assignment and/or subletting of the whole of the aforementioned construction project to you. In the event, however, that same may not have come to your personal attention, I am attaching herewith an additional copy of each of same. FHA form No. 2570 is attached hereto which should be completed and returned to H. A. Crabb & Company, Inc. for submission to the Federal Housing Administration as indicated in the attached letter. If there is anything further which must be done by G. L. Christian & Associates in compliance with their agreement, I would appreciate your so advising me. We believe it advisable to bring this matter to as speedy a conclusion as possible. On April 18, 1957, Crabb, on behalf of Associates, returned to the director of FHA, in Shreveport, the commitment for insurance issued *272 on the whole project. At that time, he requested that the FHA process eight applications for mortgage insurance to cover the eight areas into which the whole project had been divided and to issue eight commitments in accordance therewith. During the period March 14, 1957, to June 27, 1957, Associates continued negotiating with several other parties in an attempt to dispose of their rights under the letter of acceptability dated December 17, 1956, as amended. On May 15, 1957, pursuant to a request from Hunter, acting in behalf of Associates, McCrone extended the May 15, 1957, deadline provided in the amended letter of acceptability of April 11, 1957, to July 15, 1957. On June 3, 1957, Zachry-Centex called upon Associates to cause H. A. Crabb & Company, Inc., the party to whom the FHA insurance commitments had been issued, to assign same to the Republic National Bank of Dallas (hereinafter referred to as Republic National Bank). ZachryCentex had arranged for the Republic National Bank to handle the interim financing of the construction of the 2,000 housing units at Fort Polk, Louisiana. The Republic National Bank was to pay the commitment fee to the FHA and at the appropriate time *273 to apply to the FNMA and pay the FNMA commitment fee. On June 3, 1957, the attorney for Zachry-Centex wrote the attorney for Associates a letter which provided, in part, as follows: In confirmation of our telephone conversation on this date concerning the closing of the Fort Polk housing project, you have agreed to send to me immediately the interim financing commitment documents of Republic National Bank of Dallas, executed by Mr. F. A. Hunter, attorney-in-fact for G. L. Christian and Associates. Heretofore you have been informed that I have been designated as the attorney for H. B. Zackry Co., and Centex Construction Co., Inc., a Joint Venture and that it is contemplated that G. L. Christian & Associates will assign the Housing Contract on this job to such Joint Venture, such assignment to be delivered and consummated at time of closing. As you know, presently the commitments in connection with this project have been issued to H. A. Crabb & Co. Since the interim financing will be handled by Republic National Bank of Dallas, an assignment of the same must be made from H. A. Crabb & Co., assignor, to Republic National Bank of Dallas, assignee. H. B. Zachry Co., and Centex Construction *274 Co., Inc., will cause the Republic National Bank of Dallas, after the assignment aforesaid, to pay the commitment fees as required under the said commitments. Since these commitments were issued May 10, it will be necessary that this payment be made on or before Friday, June 8; otherwise, the commitments will expire by the terms thereof. You are therefore requested to obtain this assignment of the commitments immediately. At the appropriate time Republic National Bank of Dallas, to whom the commitments have been issued, will make application to FNMA and pay the FNMA commitment fee. Naturally, our commitments in connection with this matter are conditioned upon and subject to the Letter of Acceptability issued to G. L. Christian & Associates remaining in effect through closing of the project in the Joint Venture aforesaid, as intended in the agreement between H. B. Zachry Co., and G. L. Christian & Associates. At Galveston, on Wednesday, May 29, Col. McCrone, District Engineer, requested that G. L. Christian & Associates advise him in writing to the effect that it was contemplated that G. L. Christian & Associates were to assign the Housing Contract at closing to H. B. Zachry Co. *275 , and Centex Construction Co., a Joint Venture, and it is therefore requested that you so advise him immediately. Just prior to June 13, 1957, the Judge Advocate General, Department of the United Sttes Army, advised McCrone that because of the provisions of revised statute section 3737, the United States could not approve of any assignment between Associates and the Zachry-Centex joint venture. On June 13, 1957, McCrone was advised by the Judge Advocate General that Associates could enter into a 100 percent subcontract with Zachry-Centex and as part of the subcontract agreement Associates could execute an irrevocable power of attorney in favor of Zachry-Centex giving them complete control of the work and all of the administration in connection with it. On June 27, 1957, an agreement was entered into by and between Associates and Zachry-Centex which provided as follows: AGREEMENT TO SUB-CONTRACT WITH IRREVOCABLE POWER OF ATTORNEY ATTACHED THIS AGREEMENT, made this the 27th day of June, A.D. 1957, by and between G. L. Christian and Associates, consisting of G. L. Christian, F. A. Hunter, O. Gerrard, A. J. Whipple, Preston R. Plumb, N. H. Mitchell, P. H. Wolf and H. A. Crabb, a *276 Joint Venture, and Centex Construction Co., Inc. and H. B. Zachry Co., a Joint Venture, WITNESSETH: WHEREAS, pursuant to Invitation No. ENG-41-243-57-8 issued by the Department of the Army, acting by and through the District Engineer, Corps of Engineers, Galveston District, under date of 16 November, 1956, G. L. Christian and Associates submitted a bid for the construction of an Armed Services Housing Project consisting of 2000 housing units to be constructed at Fort Polk, Louisiana, and WHEREAS, under date of 17 December, 1956 (as extended), G. L. Christian and Associates were given a Letter of Acceptability pursuant to their bid, and designated as eligible bidder, and WHEREAS, the invitation to bid provided in Paragraph 32 thereof that, with the approval of the Contracting Officer and the FHA, it would be permissible to subdivide the project into two or more units for mortgaging purposes, and WHEREAS, with the approval of the Contracting Officer and the FHA, the project has been sub-divided into eight units known and identified as Fort Polk Housing Corp., Fort Polk Housing Corp. H. Fort Polk Housing Corp. III, Fort Polk Housing Corp. IV, Fort Polk Housing Corp. V, Fort *277 Polk Housing Corp. VI, Fort Polk Housing Corp. VII, and Fort Polk Housing Corp. VIII, and WHEREAS G. L. Christian and Associates proposes to enter into a contract for the construction of the 2000 units comprising the project, the parties to said contracts to be G. L. Christian and Associates, the Department of the Army and the eight mortgagor-builders designated immediately above, and WHEREAS, Invitation No. ENG-41-243-57-8 provides in Paragraph 27 thereof that with the prior written approval of the Department of the Army and the Federal Housing Administration, the eligible bidder may sub-contract substantially all construction, and WHEREAS, subsequent to the time of submission of its bid pursuant to the aforementioned invitation it became necessary for G. L. Christian and Associates to sub-contract with another party for the construction as provided for in said invitation to bid, and WHEREAS, Centex Construction Co., Inc. and H. B. Zachry Co. have reviewed to its complete satisfaction the bid of the eligible bidder for the construction of the housing project referred to in said letter of acceptability, as amended and extended, as well as the invitation for bids, the plans, *278 specifications and designs upon which said bid was predicated, together with all other contract documents, changes, alternates, additives and related matters whether contained in the specification forms and instructions or otherwise, without relying in any manner upon G. L. Christian & Associates or any of the members of said joint venture or its agents and representatives, and WHEREAS, Centex Construction Co., Inc. and H. B. Zachry Co., a Joint Venture, are experienced in the construction of housing to be constructed under Contract No. DA-41-243-eng-3361 and construction of the project will be expedited by having the direct control and supervision of construction in Centex Construction Co., Inc., and H. B. Zachry Co., a Joint Venture, and NOW THEREFORE, in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration paid to G. L. Christian and Associates by Centex Construction Co., Inc. and H. B. Zachry Co., a Joint Venture, the receipt of which is hereby acknowledged, the parties hereto agree as follows 1. G. L. Christian and Associates hereby agree to sub-contract to Centex Construction Co., Inc., and H. B. Zachry Co., a Joint Venture, as general *279 contractor all of the work provided for and contemplated in the aforesaid Letter of Acceptability, as amended and extended, for the contract price therein set out, or as may be hereafter changed and relinquishes all its right, title and interest in and to the proposed contract between G. L. Christian and Associates, the Department of the Army and the eight mortgagor-builders, to be known and identified as Contract No. DA-41-243-eng-3361. 2. Centex Construction Co., Inc. and H. B. Zachry Co., a Jointventure, accept this sub-contract from G. L. Christion and Associates together with all of the right, title, interest, liabilities and obligations of G. L. Christian and Associates in and to the proposed Contract No. DA-41-243-eng-3361 and hereby assumes all of the rights and obligations of G. L. Christian and Associates under the Letter of Acceptability, as amended and extended, and the proposed contract, and further agrees to relieve and save harmless the said G. L. Christian and Associates from its obligations and responsibilities set forth in said Letter of Acceptability, as amended and extended, and in the proposed contract. 3. Simultaneously with the execution of this agreement *280 to sub-contract the whole of said work to be performed under said Housing Contract hereinabove designated to Centex Construction Co., Inc., and H. B. Zachry Co., a Joint Venture, G. L. Christian and Associates have executed an irrevocable power of attorney coupled with an interest, which irrevocable power of attorney is attached hereto and made a part hereof for all purposes as though fully and completely set out herein. 4. As part of the consideration for this agreement to sub-contract the whole of said work to be performed under the said housing contract hereinabove designated to Centex Construction Co., Inc. and H. B. Zachry Co., and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the undersigned, Centex Construction Co., Inc., its successors and assigns, and H. B. Zachry Co., its successors and assigns, jointly and severally, hereby covenant and agree to at all times save harmless and keep indemnified the said G. L. Christian & Associates, and each of said members constituting the joint venture of G. L. Christian & Associates, against any and all claims, suits, actions, debts, damages, costs, charges and expenses, including *281 Court costs and attorney's fees, and against all liability, losses and damages of every nature whatsoever which G. L. Christian & Associates, or any of the members of the said joint venture, shall or may at any time sustain or be put to by reason of the aforementioned letter of acceptability, as amended and extended, the proposed housing contract No. DA-41-243-eng-3361, the Power of Attorney hereinbefore referred to and made a part hereof, and by the execution of this agreement. The irrevocable power of attorney attached to the agreement dated June 27, 1957, gave Zachry-Centex the power "to do any and every act and execute any and every power that Principal or each of us might or could do or exercise to fully, effectually and finally carry out and comply with all the terms and provisions of" the letter of acceptability, as amended. The procuration gave Zachry-Centex the power to enter into the housing contract and to do any and everything incident thereto. The procuration also recited that Associates intended to grant and give Zachry-Centex a "universal power of attorney only insofar as said Housing Contract is concerned and the projects to be constructed thereunder" including "the *282 authority to bring and defend suits where necessary in the performance and completion of said Housing Contract or any right or rights incident thereto." The following letter dated June 27, 1957, was sent by Associates to Zachry-Centex: On this date G. L. Christian and Associates on the one part and Centex Construction Co., Inc., and H. B. Zachry Co., a Joint Venture, on the other part have executed a contract to subcontract coupled with an irrevocable power of attorney, which instruments are hereby referred to and made a part hereof. In connection therewith and in implementation thereof you will do the following: 1. You will pay or cause to paid the balance of the FHA commitment fees on the above projects when the same are due. 2. When FNMA will have funds available for this Capehart project, you will cause an application to be made for eight (8) commitments arising out of the above captioned project, and simultaneously with said application, will pay the necessary commitment fees. 3. You will meet all necessary requirements and take all necessary steps to keep the Letter of Acceptability (as amended and extended) heretofore issued in full force and effect. 4. Simultaneously *283 with the execution of this agreement you will place in escrow in the Republic National Bank of Dallas the following: a. One Hundred Thousand ($100,000.00) Dollars in cash to be disbursed to G. L. Christian and Associates as provided in the escrow agreement. b. An amount equal to that which was put up by G. L. Christian and Associates with FHA at the time of filing the application, which amount is at the rate of One and 50/100 ($1.50) Dollars per One Thousand ($1,000.00) Dollars, or approximately Fifty Thousand ($50,000.00) Dollars. c. The sum of Twenty-Five Thousand ($25,000.00) Dollars, which represents the amount of the cash bid bond heretofore deposited by G. L. Christian and Associates with the United States of America. In this connection we agree that in the event said Twenty-Five Thousand ($25,000.00) Dollars is returned to G. L. Christian and Associates, same will be immediately endorsed in your favor and delivered to you. d. The notes aggregating One Hundred Fifty Thousand ($150,000.00) Dollars. If the said Housing Contract is not entered into and the projects closed within forty (40) days after FNMA has Capehart funds available therefor, then Centex Construction *284 Co., Inc., and H. B. Zachry Co., a Joint Venture, has the option to (a) pay G. L. Christian and Associates all of the sums deposited in escrow, and to cause the escrow agent to deliver to G. L. Christian and Associates the notes hereinabove referred to at the expiration of sixty (60) days from the date FNMA has Capehart funds available therefor or at the closing, whichever is sooner; or (b) Centex Construction Co., Inc., and H. B. Zachry Co., a Joint Venture, may at the expiration of the forty (40) day period elect to terminate the entire contract as between the parties, and any sums paid by Centex Construction Co., Inc., and H. B. Zachry Co., a Joint Venture, for commitment or application fees will be forfeited. 6. It is represented and you are advised that paragraph 4 of the said agreement to sub-contract shall not be interpreted and it is not the intention thereof that you will be liable for any costs or expenses or claims incurred by G. L. Christian and Associates prior to March 14, 1957, nor will you be liable for any costs, expenses or claims incurred by G. L. Christian and Associates other than reimbursement of the Twenty-Five Thousand ($25,000.00) Dollar bid deposit and FHA *285 application fee paid by G. L. Christian and Associates, it being the intention of said agreement that you be liable for all work or acts or activities in connection therewith. If this is your understanding, please indicate your acceptance thereof in the space provided below, Very truly yours, G. L. CHRISTIAN AND ASSOCIATES By /s/F. A. Hunter / F. A. Hunter, Individually and as Agent and Attorney-in-Fact ACCEPTED: CENTEX CONSTRUCTION CO., INC., AND H. B. ZACHRY CO., A JOINT VENTURE CENTEX CONSTRUCTION CO., INC. By /s/ Tom Lively / President H. B. ZACHRY CO. By /s/ H. B. Zachry / President On July 29, 1957, Zachry-Centex, as agent and attorney in fact for Associates, contracted with the United States for the construction of 2,000 housing units at Fort Polk for the aggregate consideration of $32,893,100. In connection with the housing contract, there were eight payment bonds and eight performance bonds executed. Associates, Centex and Zachry were the principals on all sixteen of these bonds. The total penal sums of the eight performance bonds aggregate $32,893,100. All records maintained by the United States in connection with the work being done on 2,000 housing units *286 at Fort Polk, Louisiana, listed the name G. L. Christian and Associates as prime contractor. Associates were paid an aggregate of $250,000 as a result of their agreement to convey their rights under the letter of acceptability and ultimately their execution of the 100 percent subcontract on June 27, 1957. This payment was made as follows: (a) Cash in the amount of $174,500 was paid to cover respectively: (1) $100,000 consideration; (2) $25,000 reimbursement of bid deposit (not included in the $250,000 total); (3) $49,500 reimbursement of deposit made to the FHA district office in Shreveport, Louisiana (not included in the $250,000 total). (b) As further consideration, 14 promissory notes in the aggregate sum of $150,000 were executed by Centex and Zachry as makers all dated March 14, 1957, and payable to the respective members of the G. L. Christian and Associates joint venture. These notes matured and were paid by the Zachry-Centex joint venture as follows: Payee
Date Paid
Amount
F. A. Hunter
12-14-57
$ 9,500
G. L. Christian
12-14-57
9,500
O. Gerrard
12-14-57
9,500
A. J. Whipple
12-14-57
21,375
Paul H. Wolf
12-14-57
21,375
N. H. Mitchell
12-14-57
1,875
Preston R. Plumb
12-14-57
1,875
F. A. Hunter
9-14-58
9,500
G. L. Christian
9-14-58
9,500
O. Gerrard
9-14-58
9,500
A. J. Whipple
9-14-58
21,375
Paul H. Wolf
9-14-58
21,375
N. H. Mitchell
9-14-58
1,875
Preston R. Plumb
9-14-58
1,875
$150,000
*287 By telegram dated February 5, 1958, the United States notified "G. L. Christian and Associates, Inc., c/o Centex Construction Co., Inc. and H. B. Zachry Co." that all work under the contract for the 2,000 dwelling unit project at Fort Polk, Louisiana, was to be terminated. Following the termination of the contract by the United States, a suit styled G. L. Christian and Associates v. United States of America was filed in the Court of Claims for damages sustained as a result of an alleged breach of contract. In this suit Associates was represented by its agent and attorney in fact, Zachry-Centex. The petitioners had no monetary interest in the proceedings before the Court of Claims. On their Federal income tax returns for 1957, petitioners reported their distributive share of the profit on the transaction with Zachry-Centex as long-term capital gains. As to each petitioner, respondent determined: you are not entitled to a deduction from gross income of * * * which you claimed under Section 1202 of the Internal Revenue Code of 1954 against income you received in connection with a Letter of Acceptability issued on the Department of the Army Project No. 059-81003 at *288 Fort Polk, Leesville, Louisiana, for the reason that you have not established that there was a sale. In the event you establish there was a sale, it is determined that the subject of the sale was not a capital asset. In any event, the Letter of Acceptability was held for less than six months. Opinion The issue is whether petitioners correctly reported their distributive share of the gains from the transaction with Zachry-Centex as long-term capital gain. In order for a transaction to result in a capital gain, there must be a "sale or exchange" of a "capital asset" that has been "held for more than six months." Section 1222(3), Internal Revenue Code of 1954. Assuming, arguendo, that petitioners' rights under the letter of acceptability constituted a capital asset [2] and there was a sale or exchange, petitioners have failed to show that the asset was held for more than six months. *289 Petitioners contend that their rights were held for more than six months. It is petitioners' position that their rights were acquired on December 17, 1956, when the letter of acceptability was issued to them and were sold on June 27, 1957, when the subcontract with irrevocable power of attorney was entered into. Petitioners assert that although they signed an agreement and attempted to sell their rights to Zachry on March 14, 1957, no valid contract ever resulted. Petitioners contend that when they signed the agreement they were advised by their attorney that it would not be binding on them unless financing was available from FNMA. They maintain that they did not intend to make a contract unless the FNMA financing was available. Since the financing did not materialize, petitioners contend that the agreement was never in force or effect. Petitioners contend that there was no unconditional delivery of the instrument. In addition, petitioners contend that the March 14 contract was ineffective because it was not signed or approved by any governmental official. It is also argued that petitioners' intent is evidenced by the fact that after March 14, 1957, they continued to negotiate with *290 others in an attempt to dispose of their rights. The preponderance of the evidence is against petitioners. The contract of March 14, 1957, effectively disposed of any rights petitioners had. The attorney [3] representing Associates at the time of the March 14, 1957, contract negotiations testified that he advised petitioners, together with the other joint venturers, not to execute the contract unless it was conditioned on the FNMA financing being available. Assuming, arguendo, that this is true, there is no indication as to how long this limitation was to last. Was it intended to be limited to one day, one week, a month or a year"? In any event, there is no evidence that Zachry ever agreed to any such conditional signing. Petitioners' attorney also testified that in his opinion there was no unconditional delivery of the March 14 contract. We regard this as little more than an unsupported conclusion negatived by other facts. See Arden-Rayshine Co., 43 B.T.A. 314, 320 (1941); 7- Up Fort Worth Co., 8 T.C. 52 (1947).
*291 There are many factors of record which show that both Associates and Zachry considered the March 14, 1957, contract to be valid and binding. First, petitioners' contentions on brief are contradicted by their own testimony. Hunter and Christian were the only two joint venturers to testify. Both of these men testified that they intended to enter into a binding contract on March 14, 1957. Second, by mid-March 1957, it was known that the FNMA financing was not available. Yet, on April 1, 1957, Hunter had apparently written the director of the FHA regarding the subletting of the housing contract to Zachry. Further, in a letter dated April 5, 1957, to H. A. Crabb & Company, Inc., the director of the FHA stated there would be no objection to subletting the contract provided Zachry submitted a Form 2570 for approval. Third, on March 20, 1957, Associates, at the request of Zachry, requested the United States, through its contracting officer, to cause the FHA to resume processing of the application for eight mortgages so that eight commitments could be issued in lieu of the one issued March 13, 1957. Fourth, on April 9, 1957, Zachry and Centex entered into a joint venture agreement which stated, *292 in part, that: WHEREAS, First Party [Zachry] has heretofore made and entered into a contract with G. L. Christian and Associates, which contract is dated March 14, 1957, under the terms of which the said G. L. Christian and Associates have agreed to assign all of their rights and interests in the Fort Polk, Leesville, Louisiana, FHA No. 059-81003, Army No. 2, Project, described in Letter of Acceptability dated December 17, 1956, and letter extending the date for compliance therewith dated February 27, 1957, signed by W. P. McCrone, Colonel, CE, District Engineer, Corps of Engineers, U.S. Army, Galveston District, Galveston, Texas, and all contracts issued or to be issued thereunder with complete rights of subrogation, under certain conditions as therein set forth, and which contract is referred to and made a part hereof for all purposes; * * * [Italics supplied.] Fifth, on April 16, 1957, petitioners' attorney wrote Zachry concerning the housing contract. References were made to the "agreement between H. B. Zachry Company and G. L. Christian & Associates, dated March 14th, 1957." The subject of the letter was that the project had been divided into eight areas as requested by *293 Zachry. It was pointed out that after having been broken down, the amended letter of acceptability required certain immediate steps to be taken in order to remain in force, and not jeopardize the contracts to be entered into. It was then stated that: In view of the aforementioned agreement with your company, it is presumed that the various steps outlined in said letter of acceptability will be undertaken and completed by you, all of which should be made known to the contracting officer as requested in said letter of acceptability. * * * It is my understanding that you have been previously furnished with copies of letters from the proper governmental agencies approving the assignment and/or subletting of the whole of the aforementioned construction project to you. In the event, however, that same may not have come to your personal attention, I am attaching herewith an additional copy of each of same. FHA form No. 2570 is attached hereto which should be completed and returned to H. A. Crabb & Company, Inc. for submission to the Federal Housing Administration as indicated in the attached letter. On cross examination, petitioners' attorney was asked why he used the term "agreement" *294 in his letter. The following testimony was given in response to the question: A. If you will notice, the letter refers to the breaking up of the project into eight areas. Now, after our fiasco in Dallas and not having the "Fannie May" funds available we tried to interest as many people as we could, and to see if the joint venture could get interim financing, permanent financing or make a sale of the project. Q. Mr. Witness, would you answer the question I asked you, please. Why did you use the term "agreement"? A. Counsel, I will answer that, but I have to lay a predicate to what you are attempting to show as an inconsistency. I have to lay a proper predicate for it. Q. Co ahead, Mr. Ladin. A. You must remember, and I am sure you know, that Colonel J. D. Lang with the Zachry Company was the immediate predecessor of the district engineer of the Corps of Engineers at Galveston. In other words, the contracting officer, Colonel W. P. McCrone was the immediate successor to Colonel J. D. Lang, who was employed by Zachry. Colonel Lang was very helpful to us, and inasmuch as he knew the modus operandi of the Corps of Engineers in Galveston and he was in a better position to advise *295 us how various things could be accomplished. G. L. Christian and Associates would like to have had the March 14 contract in effect, but Zachry did not consider it in effect. I think that is borne out by the fact that in one of your exhibits - Q. Let me restate my question. It strikes me that this answer is not responsive. I said your sentence says: "reference is made to the agreement dated March 14." A. We were trying to cause him to cooperate with us. Q. All right. Thank you. A. And they were denying the validity of the contract, and we were trying to get him to assist us. If cooperation was sought, it would appear that it could have been obtained in a more direct manner than referring to an "agreement" which petitioners contend was never in force or effect. Furthermore, in his testimony petitioners' attorney is apparently referring to "J. D. Lang" whereas the letter in question was addressed to "H. B. Zachry." In addition, the idea that Zachry was denying the effect of the contract seems to conflict with the fact that on April 9, 1957, Zachry and Centex entered into a joint venture for the specific purpose of building the homes called for in the letter of acceptability. *296 As we have pointed out before, the joint venture agreement specifically states that a contract was entered into on March 14, 1957. Sixth, on April 18, 1957, H. A. Crabb & Company, Inc., sent certain forms to the director of the FHA. At that time he was advised that the FHA Form 2570, referred to supra, executed by Zachry would follow by separate mail. Seventh, on June 3, 1957, an attorney for Zachry wrote petitioners' attorney concerning the housing project. Among other things, it was stated that: Naturally, our commitments in connection with this matter are conditioned upon and subject to the Letter of Acceptability issued to G. L. Christian & Associates remaining in effect through closing of the project in the Joint Venture aforesaid, as intended in the agreement between H. B. Zachry Co., and G. L. Christian & Associates. [Italics supplied.] Eighth, in a letter dated June 27, 1957, from Associates to Zachry-Centex, it was stated that it was not intended that Zachry-Centex be liable for any expenses or costs Associates incurred prior to March 14, 1957. The only exceptions were the $25,000 bid deposit and the FHA application fee. Ninth, the notes by which petitioners were paid *297 were dated March 14, 1957. Petitioners' attorney testified that the notes were not executed until three or four days prior to June 27, 1957. He stated that they were dated on March 14 so that they would mature earlier and petitioners would get a higher rate of interest. However, when he was first questioned about the matter, he stated that he had no knowledge of when the notes were executed or by whom. Tenth, the contract of March 14, 1957, contemplated that other instruments might be needed in order that petitioners' rights under the letter of acceptability be transferred. The contract specifically provided: It is also understood and agreed that Assignors will secure from the proper governmental agencies the requisite written approval of this assignment at or prior to the date set for the execution of said housing contract and they further agree to execute any and all documents and papers necessary or required to effect this assignment. The subcontract with the irrevocable power of attorney attached was one of those anticipated necessary instruments. The subcontract did not result from the fact that there was no contract on March 14, but because this is the form requested by the *298 Government. The Government, as it has the power to do under revised statutes section 3737 as last amended by Act of May 15, 1951, ch. 75, 65 Stat. 41 (section 15, 41 U.S.C.) refused to allow petitioners to "assign" the housing contract. However, it was suggested the arrangement could be accomplished by a 100 percent subcontract and irrevocable power of attorney. Even the Zachry-Centex joint venture agreement contemplated that the rights might be transferred by assignment or subletting whichever was appropriate. It just so happened that the subcontract was appropriate. While petitioners' continued negotiations lend some weight toward their contention that no contract was entered into on March 14, 1957, we believe that in view of the other facts of record this is insufficient to negative a disposition on that date. Petitioners' unilateral action could not undo what had previously been done. It would appear that much of the difficulty concerning this aspect could have been cleared up if some representative of Zachry had testified in this case. There is also little merit in petitioners' contention that the March 14 contract was ineffective because it was not signed or approved by any *299 governmental official. This argument can be disposed of by the following one sentence quotation from petitioners' attorney's letter of April 16, 1957, supra: It is my understanding that you have been previously furnished with copies of letters from the proper governmental agencies approving the assignment and/or subletting of the whole of the aforementioned construction project to you. * * *
Based on the record before us, we hold that petitioners did not hold the asset disposed of for more than six months. Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: F. A. Hunter and Gladys Hunter, Docket No. 91747; and Oswald Gerrard, Jr., and Kathryn Gerrard, Docket No. 91750.↩
2. On brief, petitioners attempt to identify the asset disposed of by stating that: "After making a bid on a government contract, the Petitioners were given a letter of acceptability. The letter of acceptability gave the Petitioners the right, by meeting certain conditions, to a government contract. This letter of acceptability and the benefits which went with it, is what the Petitioners were paid $250,000 for."↩
3. All references to "petitioners' attorney" in this opinion refer to their attorney during the negotiations with Zachry and Centex and not to their attorney in this proceeding.↩